**IN THE COUNTY COURT OF THE TENTH JUDICIAL CIRCUIT**
**IN AND FOR POLK COUNTY, FLORIDA**
**SMALL CLAIMS DIVISION**

| | |
|---|---|
| **Jordan Prais** | **Case No.:** _____ |
| *Plaintiff*, | |
| vs. | **Section:** _____ |
| **Commonwealth Financial Systems, Inc.,** *and* **Pendrick Capital Partners II, LLC,** | **Ad Damnum: $2,000 + Atty Fees & Costs** |
| *Defendants*. | **Jury Trial Demanded** |

## COMPLAINT AND DEMAND FOR JURY TRIAL

**COMES NOW** the Plaintiff, **Jordan Prais** ("**Mr. Prais**"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendants, **Commonwealth Financial Systems, Inc**., ("**Commonwealth**") and **Pendrick Capital Partners II, LLC** ("**Pendrick**") (collectively, the "**Defendants**"), stating as follows:

## PRELIMINARY STATEMENT

1.      This is an action brought by Mr. Prais against the Defendants for violations of the *Fair Debt Collection Practices Act*, 15 U.S.C. § 1692, *et seq.* ("**FDCPA**") and against Commonwealth for violations of the *Fair Credit Reporting Act*, 15 U.S.C. §1681, *et seq.* ("**FCRA**").

## JURISDICTION AND VENUE

2.      Jurisdiction arises under the FDCPA, 15 U.S.C. § 1692k(d), the FCRA, 15 U.S.C. § 1681p, and Section 34.01, Florida Statutes.

3.      The Defendants are subject to the provisions of the FDCPA and the FCRA and to the jurisdiction of this Court pursuant to Section 48.193, Florida Statutes.

4.      Pursuant to Section 47.051, Florida Statutes, venue is proper in Polk County, Florida, because the acts complained of were committed and / or caused by the Defendants within Polk County.

## PARTIES

### Mr. Prais

5.      **Mr. Prais** is a natural person residing in Lakeland, Polk County, Florida, and a *Consumer* as defined by the FDCPA and the FCRA, 15 U.S.C. § 1692a(3)  and 15 U.S.C. §1681a(c), respectively.

### Commonwealth

6.      **Commonwealth** is a Pennsylvania corporation with a primary business address of **245 Main Street, Dickson City, PA 18519**.

7.      Commonwealth is registered to conduct business in the State of Florida, where its registered agent is **CT Corporation System, 1200 S. Pine Island Rd., Plantation, FL 33324**.

### Pendrick

8.      **Pendrick** is a Delaware limited liability company with a primary business address of **2331 Mill Rd., Suite 510, Alexandria, VA 22314**.

9.      Pendrick is registered to conduct business in the State of Florida, where its registered agent is **CT Corporation System, 1200 S. Pine Island Rd., Plantation, Florida 33324**.

### DEFENDANTS ARE DEBT COLLECTORS

10.     The Defendants are *Debt Collectors* within the meaning of the FDCPA, 15 U.S.C. § 1692a(6), in that they use postal mail or another instrumentality of commerce, interstate and within the State of Florida, for their businesses, the principal purposes of which are the collection

of debts. Alternatively, they regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

11.     Commonwealth is registered with the Florida Office of Financial Regulation as a *Consumer Collection Agency* ("**CCA**"), holding license number **CCA9904088. SEE PLAINTIFF'S EXHIBIT A.**

12.     Pendrick is registered with the Florida Office of Financial Regulation as a CCA, holding license number **CCA9903458**. **SEE PLAINTIFF'S EXHIBIT B.**

## FACTUAL ALLEGATIONS

### Drunk Driver Hits Mr. Prais

13.     On or around March 27, 2016, the car Mr. Prais was traveling in with a companion was hit head-on by a drunk driver, severely injuring Mr. Prais.

14.     The drunk driver was later arrested and charged with multiple felony counts of driving under the influence resulting in severe bodily harm.

15.     Witnesses to the accident called 911. Emergency responders quickly determined that Mr. Prais required emergency medical treatment and determined he should be transported to a hospital by ambulance.

16.     Purportedly, a portion of the treatment rendered to Mr. Prais was performed by a hospital subcontractor, Osprey Emergency Physicians ("**Osprey**").

17.     Mr. Prais had personal injury protection ("**PIP**") insurance as well as other medical insurance.

18.     Osprey failed to seek reimbursement from Mr. Prais' insurance carriers and later claimed $1,783 was owed by Mr. Prais (the "**Debt**").

19.     The Debt did not arise from a written contract between Osprey and Mr. Prais or any verbal or written agreement to pay Osprey any particular amount for its services.

20.     The statute of limitations in Florida for a legal or equitable action on a contract, obligation, or liability *not founded on a written instrument* is four years. *See* Section 95.11(3)(k), Florida Statutes.

21.     Thus, the statute of limitations for a legal action to enforce the Debt ran in March 2020.

22.     At some point after March 2016, Osprey sold the Debt to Pendrick.

23.     Around November 8, 2020, Pendrick assigned the Debt to Commonwealth for collection.

## Commonwealth Obtains Credit Report Under False Pretenses

24.     Because the debt arose from services which were for family, personal, or household purposes, specifically, *personal medical services*, the Debt meets the definition of *Debt* as defined by the FDCPA, 15 U.S.C. § 1692a(5).

25.     While the debt is a **consumer debt**, it is not a **"credit transaction"** under the FCRA. *See* 15 U.S.C. § 1681b(a)(3)(A).

26.     To lawfully request a *Credit Bureau Report* ("**CBR**") from a *Consumer Credit Reporting Agency* ("**CRA**"), a debt collector must be collecting a debt which arises from a *Credit Transaction* involving the consumer. *See* 15 U.S.C. §1681b(a)(3)(A); *Pigg v. Fair Collections & Outsourcing, Inc.*, No. 1:16-CV-01902-JMSDML, 2017 WL 3034266, at *4 (S.D. Ind. July 18, 2017) (holding that a debt collection agency did not have a permissible purpose because, even where a debt exists, a "credit transaction is a necessary prerequisite" for § 1681b(a)(3)(A)).

27.    A *Credit Transaction* involving the consumer is one in which the consumer voluntarily participates and enters into an agreement to receive goods or services in advance of payment, with the consent of both parties. See *Pintos v. Pacific Creditors Association*, 504 F. 3d 792, 798 (9th Cir. 2007); *Miller v. Trans Union LLC*, No. 06 C 2883 at *7 (N.D. Ill. Feb. 28, 2007); *Rodriguez v. Experian Info. Sols., Inc*., Case No. C15-01224RAJ, at *9 (W.D. Wash. Jul. 25, 2016).

28.    While a patient in clear need of medical attention is presumed to consent to medical treatment and can be held legally liable for the payment of reasonable fees, Mr. Prais did not make an *affirmative* request for deferred payment arrangements.

29.    Mr. Prais did not ask to be treated by Osprey; rather, emergency medical service workers determined that his condition required evaluation by specially trained doctors.

30.    Mr. Prais did not engage in a voluntary request for services for which he agreed to pay later.

31.    The services rendered to Mr. Prais when he was incapacitated did not create a *Credit Transaction* under the FCRA because the Debt was not voluntarily incurred, nor were extended payment terms requested.

32.    Moreover, to be a *Credit Transaction,* there must be a creditor, *e.g.,* Osprey, who agrees to provide goods or services while allowing the consumer to make payment at a later date.

33.    However, Commonwealth reported the purported Debt as an unpaid collection account to multiple nationwide CRAs, stating to the CRAs that the Debt was due and payable *the same day* services were incurred.

34.    This is evidenced by the fact Commonwealth reported March 27, 2016, as the *Date of First Delinquency* ("**DOFD**") to Equifax Information Services, LLC ("**Equifax")** when it

reported the Debt as an unpaid collection account for which Mr. Prais was solely liable. **SEE PLAINTIFF'S EXHIBIT C.**

35.     A debt which Commonwealth reports as delinquent beginning March 27, 2016, and which was for emergency medical services rendered on March 27, 2016, is inherently not a *Credit Transaction* because no delayed payment terms were offered by Osprey to Mr. Prais.

36.     Therefore, Commonwealth knew the transaction was not a *Credit Transaction*, as it reported that the Debt was past due on the very day it was allegedly incurred.

37.     Despite this knowledge, on or about November 19, 2020, Commonwealth requested a CBR from Trans Union LLC ("**Trans Union**"), another nationwide CRA, for collection purposes. **SEE PLAINTIFF'S EXHIBIT D.**

38.     Commonwealth intended to, and did, use the wealth of information provided by Trans Union regarding Mr. Prais in its efforts to attempt to collect the Debt from him.

39.     A debt collector must be collecting a debt which is a "credit transaction involving the consumer," 15 U.S.C. 1681b(a)(3)(A), to lawfully request a CBR regarding a consumer debt.

40.     Debt collection is a permissible reason for obtaining a credit report **only** when a debt arises from a transaction in which the debtor **voluntarily and directly seeks credit**." *Baron v. Mark A. Kirkorsky, P.C.* (Case No. 17-cv-01118, U.S.D.C., District of Arizona) (**Emphasis added.)**

41.     Because the debt did not involve a *Credit Transaction*, Commonwealth did not have a permissible purpose under the FCRA to obtain a CBR from Trans Union.

42.     Upon information and belief, Trans Union requires a debt collector to certify that it has a permissible purpose to obtain a report when requesting a CBR; therefore, to obtain Mr. Prais' report, Commonwealth falsely certified that it had such purpose.

43.     If Commonwealth lacked a permissible purpose to obtain Mr. Prais' report when it requested a CBR for consumer debt collection purposes, Commonwealth made a misrepresentation in connection with the collection of a consumer debt.

### Unfair and Deceptive Collection Efforts

44.     Around November 2020, Commonwealth mailed a collection letter to Mr. Prais in connection with the collection of the Debt.

45.     At no point in the communication did Commonwealth disclose that, due to the age of the Debt, Mr. Prais could not be sued for it.

46.     The failure by a debt collector to disclose a debt is time-barred is materially misleading since it impacts the consumer's ability to chart a course of action to take concerning the debt. *See, e.g.*, *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 425, 428-30 (3d Cir. 2018); *Pantoja v. Portfolio Recovery Associates, LLC*, 852 F.3d 679, 684, 687 (7th Cir. 2017); *Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507, 509 (5th Cir. 2016); Buchanan v. Northland Group, Inc., 776 F.3d 393, 395, 399-400 (6th Cir. 2015); and *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1020 (7th Cir. 2014).

47.     Commonwealth also reported the Debt to at least three nationwide CRAs as an unpaid collection account, severely damaging Mr. Prais' credit report and scores.

48.     Mr. Prais has no other collection accounts, charge-offs, or severe late payment history reporting to his credit and, prior to Commonwealth's reporting, he had FICO credit scores in the 730 range – considered "excellent."

49.     Reporting a debt to a CRA is an attempt to collect the debt alleged therein. *See, e.g., Edeh v. Midland Credit Management, Inc.,* 748 F. Supp. 2d 1030 (D. Minn. 2010) ("The Court

has learned, through its work on countless FDCPA cases, that threatening to report and reporting debts to CRAs is one of the most commonly-used arrows in the debt collector's quiver.")

50.     The **Consumer Data Industry Association** ("**CDIA**") is an international trade association, representing over 140 members involved in credit reporting, mortgage reporting, check verification, tenant and employment screening, collection services, and fraud verification services. The CDIA is active in both federal and state legislative affairs, public relations, education, and the promulgation of industry standards.

51.     Because consumer credit reporting information is such sensitive data, with far reaching implications for consumers, the CDIA works together with CRAs to develop, maintain and enhance industry-standard reporting formats and guidelines.

52.     In cooperation with major CRAs such as Trans Union and Equifax, the CDIA publishes Metro 2 reporting standards ("**Metro 2**") to assist furnishers with their compliance requirements under the FCRA.

53.     Metro 2 standards provide uniformity in the reporting and interpretation of credit data, including credit risk scoring.

54.     FICO® credit scores, developed by the Fair Isaac Corporation, are the most commonly used credit scoring system in the United States.

55.     FICO® credit scores utilize data reported by CRAs and furnishers which are, ostensibly, in compliance with Metro 2 standards.

56.     Commonwealth knows, or should know, that entities who perform credit risk scoring (*e.g.,* FICO scores) and other functions utilizing the data reported by Commonwealth assume Commonwealth's compliance with Metro 2 standards in reporting consumer information.

57.    In March 2016, the major CRAs announced their *National Consumer Assistance Plan* ("**NCAP**"), which was implemented to prevent further action from federal regulatory agencies.

58.    The major CRAs provided copies of this new guidance to their furnishers of data, including Commonwealth, in May 2016.

59.    Metro 2 guidelines were updated as part of the NCAP and, effective June 15, 2016, debt collectors were instructed to ***not*** report debts that "did not arise from a consumer contract or agreement to pay."

60.    The Debt – even assuming, *arguendo*, Mr. Prais is somehow liable for it – clearly did not arise from a consumer contract or agreement to pay.

61.    Despite this guidance being in effect for more than three years, Commonwealth reported the $1,783 "debt" to the major CRAs multiple times.

62.    At all times relevant, Commonwealth was acting as Pendrick's agent and within the scope of its authority.

63.    Pendrick, as principal, is jointly and severally liable for the actions of its agent, Commonwealth.

64.    Mr. Prais has hired the aforementioned law firm to represent him in this matter and has assigned his right to fees and costs to such firm.

## COUNT I
## VIOLATIONS OF THE FDCPA

65.    Mr. Prais adopts and incorporates paragraphs 1 – 64 as if fully restated herein.

66.    The Defendants violated **15 U.S.C. § 1692e(2)(a)** when Commonwealth, acting as Pendrick's agent, made a false representation about the character and amount of a debt by: (a)

failing to disclose that a debt was time-barred in collection communication; (b) representing to Trans Union in November 2020 that the Debt stemmed from a *Credit Transaction* involving Mr. Prais when it did not; and, (c) representing to the CRAs that the Debt arose from a contract or agreement to pay, when it did not, and was thus unreportable.

67.     A debt collector's actions are subject to strict liability under 1692e(2)(a); *see Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004) ("[Section] 1692e(2)(A) creates a strict-liability rule. Debt collectors may not make false claims, period.").

68.     The Defendants violated **15 U.S.C. § 1692e and 1692e(10)** when Commonwealth, acting as Pendrick's agent, made false and misleading representations in an attempt to collect a debt and/or obtain information about Mr. Prais by: (a) failing to disclose a debt was time-barred in collection communication; (b) representing to Trans Union in November 2020 that the Debt stemmed from a *Credit Transaction* involving Mr. Prais when it did not, in a successful effort to obtain information about Mr. Prais to which they were not legally entitled; and, (c) representing to the CRAs that the Debt arose from a contract or agreement to pay, when it did not, and was thus unreportable.

69.     The Defendants violated **15 U.S.C. § 1692e(8)** when Commonwealth, acting as Pendrick's agent, communicated credit information known to be false, or which it should have known to be false, when it certified to Trans Union that the underlying debt which Commonwealth was requesting a credit report in connection with the collection thereof was a *Credit Transaction*, when it was not.

70.     The Defendants violated **15 U.S.C. § 1692e(8)** when Commonwealth, acting as Pendrick's agent, communicated credit information which was known to be false, when they

certified to at least three CRAs that the underlying debt was a Debt which had resulted from a consumer contract or agreement to pay, when they knew, or should have known, it was not.

71.     The Defendants' conduct renders them liable for the above-stated violations of the FDCPA.

**WHEREFORE,** Mr. Prais respectfully requests this Honorable Court enter judgment against the Defendants, jointly and severally, for:

a.      Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.      Unspecified actual damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.      Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.      Such other relief that this Court deems just and proper.

## COUNT II
## VIOLATION OF THE FCRA

72.     Mr. Prais adopts and incorporates paragraphs 1 – 64 as if fully stated herein.

73.     Commonwealth violated **15 U.S.C. § 1681b(f),** either willfully and intentionally, or recklessly and without regard for a consumer's rights, when it requested a credit report regarding Mr. Prais without a permissible purpose to obtain the report.

74.     Mr. Prais has been damaged in that his personal and highly confidential information has been obtained by an entity with whom he did not consent and which had no other permissible purpose to obtain such information.

75.     Commonwealth's conduct renders it liable under the FCRA to Mr. Prais in a statutory amount up to $1,000 per incident.

**WHEREFORE,** Mr. Prais respectfully requests this Honorable Court enter judgment against Commonwealth for:

a.   The greater of statutory damages of **$1,000** for each violation of the FCRA or Mr.

Prais' unspecified actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A) or 15

U.S.C. § 1681o(a)(1);

b.   Reasonable costs and attorney's fees pursuant to 15 U.S.C. §1681n(a)(3) and / or

15 U.S.C. § 1681o(a)(2); and,

c.   Such other relief that this Court deems just and proper

## JURY TRIAL DEMANDED

Mr. Prais hereby demands a jury trial on all issues so triable.

Respectfully submitted **February 26, 2021**, by:

**SERAPH LEGAL, P.A.**

/s/ *Brandon D. Morgan*
Brandon D. Morgan, Esq.
Florida Bar Number: 1015954
BMorgan@SeraphLegal.com
/s/ *Thomas M. Bonan*
Thomas M. Bonan, Esq.
Florida Bar Number: 118103
TBonan@SeraphLegal.com
1614 N. 19th St.
Tampa, FL 33605
(813) 567-1230
*Counsel for Plaintiff*

## ATTACHED EXHIBITS LIST

A      Commonwealth's Florida CCA License
B      Pendrick's Florida CCA License
C      Plaintiff's Equifax Consumer Disclosure, February 19, 2021, Excerpt
D      Plaintiff's Trans Union Consumer Disclosure, January 22, 2021, Excerpt

12

**EXHIBIT A**
**Commonwealth's Florida CCA License**



Florida Office of Financial Regulation

Logon

**License Details**

Press "Previous Record" to display the previous license.
Press "Next Record" to display the next license.
Press "Search Results" to return to the Search Results list.
Press "New Search Criteria" to do another search of this type.
Press "New Search" to start a new search.

| License Number: CCA9904088 | | *Current Date: 02/26/2021 11:52 AM* |
|---|---|---|
| Name: | COMMONWEALTH FINANCIAL SYSTEMS, INC. | |
| License Type: | Consumer Collection Agency | |
| License Status: | Current Active Registration | |
| License Status Effective Date: | 11/05/2020 | |
| Expiration Date: | 12/31/2021 | |
| Original Date of Licensure: | 02/02/2018 | |

**Addresses**

| **Business Main Address** | Address | |
|---|---|---|
| | | 245 MAIN STREET |
| | | DICKSON CITY , PA |
| | | LACKAWANNA |
| | | 18519 |
| | | US |
| | | View on a map |
| | Phone Number: | |
| | | (570) 347-1115 |
| **Mailing Address** | Address | |
| | | 3850 N. CAUSEWAY BLVD. |
| | | SUITE 200 |
| | | METAIRIE , LA |
| | | JEFFERSON |
| | | 70002 |
| | | US |
| | | View on a map |

Next Record   Search Results   New Search Criteria   New Search   Print

© 2018. MicroPact Version:2.11.6.62 (flofr 233)

**EXHIBIT B**
**Pendrick's Florida CCA License**



Florida Office of Financial Regulation

Logon

**License Details**

Press "Previous Record" to display the previous license.
Press "Next Record" to display the next license.
Press "Search Results" to return to the Search Results list.
Press "New Search Criteria" to do another search of this type.
Press "New Search" to start a new search.

| License Number: CCA9903458 | | *Current Date: 02/26/2021 11:54 AM* |
|---|---|---|
| Name: | PENDRICK CAPITAL PARTNERS II, LLC | |
| License Type: | Consumer Collection Agency | |
| License Status: | Current Active Registration | |
| License Status Effective Date: | 10/30/2020 | |
| Expiration Date: | 12/31/2021 | |
| Original Date of Licensure: | 06/13/2014 | |

**Addresses**

| Business Main Address | Address | 2331 MILL ROAD<br>SUITE 510<br>ALEXANDRIA , VA<br>ALEXANDRIA CITY<br>22314<br>US<br>View on a map |
|---|---|---|
| | Phone Number: | (504) 828-3700 |
| Mailing Address | Address | 3850 N. CAUSEWAY BLVD.<br>STE 200<br>METAIRIE , LA<br>JEFFERSON<br>70002<br>US<br>View on a map |

Next Record   Search Results   New Search Criteria   New Search   Print

© 2018. MicroPact Version:2.11.6.62 (flofr 233)

**EXHIBIT C**
**Plaintiff's Equifax Consumer Disclosure, February 19, 2021, Excerpt**

## 10. Collections

Collections are accounts with outstanding debt that have been placed by a creditor with a collection agency. Collections stay on your credit report for up to 7 years from the date the account first became past due. They generally have a negative impact on your credit score.

**Date Reported: Feb 15, 2021**

| | | | |
|---|---|---|---|
| Collection Agency | COMMONWEALTH FINANCIAL SYSTEMS | Balance Date | Feb 15, 2021 |
| Original Creditor Name | OSPREY EMERGENCY PHYSICIANS | Account Designator Code | INDIVIDUAL_ACCOUNT |
| Date Assigned | Nov 08, 2020 | Account Number | ▮▮▮▮ |
| Original Amount Owed | $1,783 | Creditor Classification | Medical or Health Care |
| Amount | $1,783 | Last Payment Date | |
| Status Date | Feb 15, 2021 | Date of First Delinquency | Mar 27, 2016 |
| Status | UNPAID | | |

**Comments**

Consumer disputes this account information

Medical

**Contact**

COMMONWEALTH FINANCIAL SYSTEMS
245 MAIN STREET
DICKSON CITY, PA  18519
1-855-273-8512


15

## EXHIBIT D
## Plaintiff's Trans Union Consumer Disclosure,
## January 21, 2021, Excerpt

1/22/2021                                        TransUnion Credit Report



### Account Review Inquiries

The listing of a company's inquiry in this section means that they obtained information from your credit file in connection with an account review or other business transaction with you. These inquiries are not seen by anyone but you and will not be used in scoring your credit file (except insurance companies may have access to other insurance company inquiries, certain collection companies may have access to other collection company inquiries, and users of a report for employment purposes may have access to other employment inquiries, where permitted by law).



# EXHIBIT D
## Plaintiff's Trans Union Consumer Disclosure,
## January 21, 2021, Excerpt

1/22/2021                                          TransUnion Credit Report



**COMMONWEALTH FINANCIAL**
245 MAIN ST
DICKSON CITY, PA 18519
(855) 273-8511
**Requested On:** 11/19/2020

